IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

UNITED STATES OF AMERICA

v.  CRIMINAL ACTION NO. 3:19-00203

ELIZABETH LEIGHTON MULLINS

## MEMORANDUM OPINION AND ORDER

Presently pending before the Court is Defendant Elizabeth Leighton Mullins' Motion to Suppress. *Mot. to Suppress*, ECF No. 59. The Government timely filed a Response in Opposition, *Resp. in Opp'n*, ECF No. 64, and the Court entertained oral argument on the Motion at a hearing on July 30, 2020, *Mot. Hr'g*, ECF No. 69. For the reasons set forth below and for those stated on the record at the hearing, the Court **DENIES** the Motion.

### I. BACKGROUND[1]

This case stems from the search of a property located at 1352 Charleston Avenue in Huntington, West Virginia, in connection with an ongoing investigation into a drug trafficking organization led by the Huntington Police Department ("HPD"). The defendant was present at the property during the search, and was detained by HPD officers for its duration. The search revealed significant quantities of methamphetamine and heroin, along with firearms and other drug trafficking paraphernalia. Approximately thirty minutes after the search commenced, Corporal Steven Maniskas informed Defendant of her *Miranda* rights and asked whether she would be

---

[1] These facts are drawn from the pretrial motions hearing held on July 30, 2020, at which Corporal Steven Maniskas testified to the events surrounding Defendant's arrest and interrogation.

willing to return to the police station with him. After confirming that she was not under arrest, Defendant agreed to accompany Maniskas and several other officers to the station.

Upon arrival, Maniskas and another officer moved Defendant to an interrogation room. Before proceeding to any substance, Maniskas confirmed that Defendant recalled the *Miranda* warning he had provided at the scene approximately thirty minutes earlier. After nodding yes, Maniskas asked whether Defendant wanted him to read them again. Defendant twice advised Maniskas that there was no need to repeat his *Miranda* warning, and her interview began. During the course of her questioning, Defendant made several incriminating statements about her drug distribution activities. Nevertheless, Maniskas did not arrest her upon the conclusion of the interview; instead, he arranged her transportation home and confirmed that she was not under arrest.

Though his intent was to use Defendant as an informant rather than arrest her, she went on to discuss her interrogation with other members of the organization and Maniskas' plan became impossible. No longer of any use as an informant, Defendant was formally charged in the instant case on August 14, 2019 with the filing of a three-count indictment. Defendant filed her Motion to Suppress on July 20, 2020, and the Government responded with a brief opposing the Motion and an audio/video recording of Defendant's interview at the police station.[2] *See Ex. 1*, ECF No. 65. With this factual and procedural background in mind, the Court will turn to a brief survey of the law that governs the resolution of Defendant's Motion.

---

[2] While the recording is far from perfect, it is sufficiently clear to broadly corroborate Corporal Maniskas' testimony as to his interrogation of the defendant.

## II. LEGAL FRAMEWORK

In pertinent part, the Fifth Amendment to the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." While the Fifth Amendment's protections directly pertain only to criminal trials, in *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court created a prophylactic rule "to insulate the exercise of Fifth Amendment rights from the government 'compulsion, subtle or otherwise,' that 'operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked.'" *Connecticut v. Barrett*, 479 U.S. 523, 528 (1987). Given this purpose, *Miranda* does not warrant suppression where "no constitutional objective . . . would be served by suppression." *Id.* at 529. And no constitutional objective is served where an individual knowingly and voluntarily waives his or her right not to speak with the police. *North Carolina v. Butler*, 441 U.S. 369, 373 (1979).

An effective waiver may be express or implied, but in either case the court must determine from the totality of the circumstances whether it was knowingly and voluntarily made. *Moran v. Burbine*, 475 U.S. 412, 421 (1986). "Only if the 'totality of the circumstances surrounding the interrogation' reveals both an uncoerced choice and the requisite level of comprehension" may a court conclude that a defendant has properly waived her *Miranda* rights. *Id.* In practical terms, this means there are two distinct requirements to constitute a valid waiver: first, that "the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception," and second, that "the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id*.

### III. DISCUSSION

The Government advances two arguments in favor of its position: first, that Defendant was not entitled to *Miranda* warnings because she was neither arrested nor subject to custodial interrogation, and second, that she nonetheless implicitly waived her rights under *Miranda*. As the Government's second argument is correct, the Court need not address the first.

The facts before the Court are relatively straightforward. Approximately thirty minutes after executing the search warrant, Corporal Maniskas read Defendant her *Miranda* rights from a card he maintained in his wallet. She began speaking with Maniskas, and agreed to accompany him to the police station. Once there, she again confirmed that she had been provided with her *Miranda* rights and nonetheless proceeded to speak—at length—about her involvement in drug trafficking in the Huntington area. Put simply, this is all that is required to waive one's *Miranda* rights. *United States v. Frankson*, 83 F.3d 79, 82 (4th Cir. 1996) (holding that "a defendant's subsequent willingness to answer questions after acknowledging [her] *Miranda* rights is sufficient to constitute an implied waiver" (internal quotation marks and citation omitted)).

A bifurcated inquiry into the voluntariness and knowingness of Defendant's waiver leads to the same conclusion. Within the Fourth Circuit, "[c]oercive police activity is a necessary predicate to a finding that . . . a waiver of *Miranda* rights is not voluntary." *United States v. Cristobal*, 293 F.3d 134, 140 (4th Cir. 2002). Defendant has made no showing of coercion, beyond noting that her interrogation occurred at a police station. To hold that a *Miranda* waiver is invalid for voluntariness simply because an interview occurs at a police station would be to render a significant proportion of police interviews presumptively unlawful, and in any event belies Defendant's clear affirmation at the station that she understood her rights. In fact, this latter point makes plain that her waiver was knowing as well as voluntary. While she notes that she is an

"active addict," *Mot. to Suppress*, at 2, she does not actually claim that she was under the influence of any controlled substances at the station or that her mental capacity was otherwise impaired. Indeed, it does not appear that Defendant really contests that she did not know or understand her rights at all. Her actions were knowing and voluntary, and that is all that is necessary to effectuate a valid waiver of her *Miranda* rights.[3]

### IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** the Motion, ECF No. 59, and **DIRECTS** the Clerk to send a copy of this Order to counsel and the defendant, the United States Attorney's Office, the United States Probation Office, and the United States Marshals Service.

ENTER: August 10, 2020

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

---

[3] It is worth noting that Defendant's argument regarding the lack of an explicit written waiver is unavailing. As courts have recognized time and again, the Supreme Court has firmly "rejected the position that 'explicit written waiver[s]' of *Miranda* rights are . . . necessary for a valid waiver." *United States v. Hoang*, 238 F. Supp. 3d 775, 784–85 (E.D. Va. 2017) (citing *Berghuis v. Thompkins*, 560 U.S. 370, 383 (2010)), *aff'd*, 737 F. App'x 136 (4th Cir. 2018). The fact that no written waiver was executed in this case is, quite plainly, irrelevant.